# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| ERNEST MELO, *on behalf of himself and all others similarly situated,* : <br><br>  Plaintiff, : <br><br> v. : <br><br> EQUIFAX INFORMATION SERVICES, LLC : <br><br> SERVE:  Corporation Service Company <br> 100 Shockoe Slip, 2nd Floor <br> Richmond, VA  23219 : <br><br> TRANS UNION, LLC : <br><br> SERVE:  Corporation Service Company <br> 100 Shockoe Slip, 2nd Floor <br> Richmond, VA  23219 : <br><br>  Defendants. : | CIVIL ACTION NO. <br><br> 3:18cv171 |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, ERNEST MELO ("Melo" or "Plaintiff"), by counsel, and files this Class Action Complaint against EQUIFAX INFORMATION SERVICES, LLC, ("Equifax") and TRANS UNION, LLC, ("Trans Union"), based on the following:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages, costs, and attorney's fees brought pursuant to 15 U.S.C. § 1681, *et seq.* (the Fair Credit Reporting Act or "FCRA").

2. Equifax Information Services, LLC, and TransUnion, LLC, consumer reporting agencies, have long histories of consumer complaints and lawsuits establishing that they unreasonably mix the credit files and information of one consumer with the information of

another person. This mixed file problem is caused by the Defendants' use of overly broad matching criteria to sort data into a consumer's credit file.

3. In this case, Defendants combined or mixed the credit files of the Plaintiff with other individuals including, but not limited to, his father who has a different name, date of birth, contact information, and social security number. When the Plaintiff then attempted to dispute this information, the Defendants refused to process his dispute until he provided additional documents from an arbitrary list of their own creation in violation of the Fair Credit Reporting Act.

## JURISDICTION

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

## PARTIES

5. Plaintiff is a natural person residing in Virginia, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. §1681a(c).

6. Defendant, Equifax Information Services, LLC, ("Equifax"), is a foreign limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

7. Defendant, TransUnion, LLC, ("Trans Union"), is a foreign limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

8. Upon information and belief, Defendants are consumer reporting agencies as defined in 15 U.S.C. §1681a(f). Upon information and belief, Defendants regularly engaged in the business of assembling, evaluating, and disbursing consumer information to furnish consumer reports to third parties as defined in 15 U.S.C. §1681a(d).

9.      Upon information and belief, Defendants disburse such consumer reports to third parties under contracts for monetary compensation.

## STATEMENT OF FACTS

10.     In October of 2015, Plaintiff requested and reviewed copies of his consumer disclosures from Equifax and Trans Union.

11.     Upon review, Plaintiff discovered that his credit file contained numerous inaccuracies.

12.     For example, Defendants were reporting two civil judgments supposedly entered against him in the Fairfax County General District Court.

13.     Equifax and Trans Union's reportings were inaccurate. The two civil judgments did not belong to Mr. Melo, but instead were judgments entered against his father, Ernesto Melo.

14.     These derogatory and mismatched sets of credit information severely reduced the Plaintiff's credit scores and were mixed into Plaintiff's file due to deficiencies in the Defendants' data matching algorithms.

15.     Equifax, and Trans Union have substantial notice and knowledge of the "mixed file" problems and failures of their business procedures and systems.

16.     For example, as early as 1991, the Federal Trade Commission ("FTC") brought an enforcement action against the Defendants' industry competitor Experian [formerly TRW, Inc.] in the United States District Court for the Northern District of Texas. *FTC v. TRW, Inc.,* 784 F. Supp. 361 (N.D. Texas 1991). In settling the enforcement action brought by the AGs, Experian agreed to maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files. Another enforcement action was brought against Experian by nineteen state attorneys general that resulted in a similar consent order as described in the previous paragraphs, including

the procedures related to the prevention of mixed files and procedures to reinvestigate disputes resulting from mixed files. *See TRW, Inc. v. Morales,* Civil Action No. 3-91-1340-H (N.D. Tex. 1991).

17. Thereafter, similar enforcement actions were brought against both Trans Union and Equifax resulted in consent orders where both bureaus agreed to maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files.

18. Despite the consent orders with the FTC and the attorneys general, Equifax and Trans Union's computer systems causes these mixed files, in part, because they do not require or use full identifying information for a potential credit grantor's inquiry or for incoming credit data information. Each Defendant does this to sell more credit reports.

19. Equifax and Trans Union have knowledge that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file".

20. Moreover, all three credit bureaus have been sued repeatedly for failing to prevent mixed consumer files, including an $18.6 million dollar verdict against Equifax after it placed the consumer information of a person with the same name as the plaintiff into the plaintiff's record and failed correct the errors. *Miller v. Equifax Information Services, LLC*, 3:11-cv-1231 (D. Or. 2011); *see also Calderon v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89375, *10 (D. Idaho 2012): *Howley v. Experian Information Solutions, Inc.*, Civil Action No. 09-241 (D.N.J. filed January 16, 2009); *Ainsworth v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 63174 (C.D. Cal. 2011); *Novak v. Experian Info. Solutions, Inc.*, 782 F. Supp. 2d 617 (N.D. I11. 2011); *Comeaux v. Experian Info. Solutions*, 2004 U.S. Dist. LEXIS 10705, *20 (E.D. Tex. 2004); *Cartwright v. Experian*, et al., Case No. CV 09-427 (C. D. Cal. 2009); *Campbell v.*

*Experian Info. Solutions, Inc.*, 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); *Jensen v. Experian Info. Solutions, Inc.*, 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001); *Williams v. Equifax Information Solutions, LLC,* No. 48-2003-CA-9035-0 (Orange County 2007); *Apodaca v. Discover Financial Services*, 417 F. Supp. 2d 1220 (D.N.M. 2006); See, e.g., *Philbin v. Trans Union Corp.,* 101 F.3d 957 (3d Cir. 1996); *Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329 (9th Cir. 1995); *O'Conner v. Trans Union Corp.*, Civ. No. 97 4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *see also Thomas v. Trans Union*, C.A. No. 00 1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $ 1.3 million); *Soghomonian v. Trans Union*, (E.D. Cal.) ($990,000 verdict); *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281 (E.D. Pa. 2010); *Neclerio v. Trans Union, LLC*, Civ. No. 3:11 -cv-1317 (D. Conn. Aug. 17, 2011).

21.     Numerous cases have been brought in this District and Division, alleging a mixed file or for failure to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of credit reports and files . *See e.g., Mullins v. Equifax Information Services, LLC*, 3 :05cv888, 2007 WL 2471080 (E.D. Va. August 27, 2007); *Saunders v. Branch Banking and Trust Co.,* 3:05cv731 (E.D. Va.); *Ross v. Experian Information Solutions, Inc.,* 3:09cv 144 (E. D. Va. 2009); *Baker v. Trans Union, LLC*, 3:07-cv-107 (E.D. Va. 2007); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235 (4th Cir. 2009); *Sloane v. Equifax Info Servs.*, 510 F.3d 495 (4th Cir. 2007); *Abraham Lopez, Jr., v. Trans Union, LLC*, Civil Action No. 1:12-cv-902 (E.D. Va. 2012); *Alejandro Lopez, Sr. v. Trans Union, LLC*, Civil Action No. 1:12cv1325 (E.D. Va. 2012).

22. Equifax and Trans Union knowingly choose to ignore these notices of their mixed file problems. They do so even though they already possess a simple, easy, and inexpensive means to correct and avoid the problem.

23. Despite these lawsuits and enforcement actions, Equifax and Trans Union have not significantly modified their procedures to assure that the credit reports that they prepare, publish, and maintain are as accurate as possible as required by the FCRA at 15 U.S.C. § 168le(b).

24. Upon information and belief, Equifax and Trans Union have not and do not intend to modify their procedures to comply with this section of the FCRA, because compliance would drastically increase their operating expenses.

25. Because of this negative reporting, the Plaintiff suffered actual damages including, but not limited to, damage to his credit rating, aggravation, inconvenience, embarrassment, and frustration. Plaintiff was additionally deterred from applying for lines of credit because of the negative impact of the two inaccurate judgments reported by Equifax and Trans Union.

26. Accordingly, Equifax and Trans Union's violations of 15 U.S.C. § 1681e(b) were willful, rendering Equifax and Trans Union liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

27. Defendants' failure to modify their procedures caused substantial harm to the Plaintiff.

28. On or around July 16, 2016, Plaintiff mailed a written dispute letter to Equifax and Trans Union regarding the various inaccuracies in his reports, including the two civil judgments inaccurately attributed to him and the incorrect personal identifying information by

Trans Union. In his letter, Plaintiff provided his full name, address, telephone number, date of birth, and full social security number.

29. Trans Union received the Plaintiff's dispute letter on or around July 22, 2016. Equifax received the Plaintiff's dispute letter on or about July 23, 2016.

30. On or around July 26, 2016, Trans Union mailed a letter to Plaintiff indicating that the mailing address that he provided was not listed in its records. Trans Union advised that it needed "Proof of Current Mailing Address". Trans Union provided a list of "acceptable forms of verification" and advised that it needed copies of **two** of the qualifying documents. Trans Union also advised that electronic statements from a website could not be accepted as proof of address:

    a.    Driver's license (current and unexpired);

    b.    State ID Card (current and unexpired);

    c.    Bank or Credit Union Statement (not older than two months);

    d.    Cancelled Check (not older than two months);

    e.    Government Issued ID Card (current and not expired);

    f.    Signed letter from homeless shelter (no more than one year in age);

    g.    Stamped post office box receipt (no more than one year in age);

    h.    Utility Bills (Water, Gas, Electric or Telephone) (not older than two months);

    i.    Pay Stub (not older than two months).

31. On or about July 28, 2016, Equifax mailed a letter to Plaintiff advising the Plaintiff that the identification information he provided did not match its records. Equifax required the Plaintiff forward verification of his identity and current address. Equifax stated that

to ensure his request was processed without delay, the photocopies it required should be "enlarged" to ensure that the information was legible. Further, if the illegible documents or documents contained highlights that it may cause a delay in processing and that Equifax might request that he resubmit his request with more legible documents. Equifax included a list of what it considered to be acceptable examples to verify Mr. Melo's identity:

    a.    Birth Certificate or Marriage Certificate with current name;

    b.    Pay Stub with complete U.S. Social Security Number;

    c.    W-2 Form with complete U.S. Social Security Number;

    d.    Valid Social Security Card.

Equifax also required that Plaintiff additionally provide what it considered to be acceptable documents to verify his current address:

    a.    Driver's License;

    b.    Rental/lease agreement/house deed;

    c.    Mortgage Statement or Bank Statement;

    d.    Utility Bill (i.e. gas, cable, residential telephone bill).

32. Notwithstanding these onerous requirements placed on consumers—for which no justification is found in the FCRA—the Defendants sell credit reports to its banking industry customers even when those customers provide as little as a consumer's first name, last name and any previous address.

33. Equifax and Trans Union sell credit reports to its banking industry customers and debt collectors, even when the customer does not provide a social security number for the subject of the requested report.

34. Additionally, Equifax and Trans Union sell credit reports to its banking industry customers and debt collectors, even when the customer does not provide a date of birth for the subject of the requested report.

35. Equifax and Trans Union do not require that these customers provide a copy of a government issued identification card for the subject of the requested report.

36. Furthermore, Equifax and Trans Union do not require that these customers provide a copy of a utility bill for the subject of the requested report.

37. Upon information and belief, these hurdles created by Equifax and Trans Union are designed to reduce the number of disputes that its employees must process.

38. Equifax and Trans Union make money by selling credit reports.

39. Equifax and Trans Union do not make money by processing consumer disputes.

40. In fact, each of these companies lists the "consumer dispute" business component as a cost center.

41. These policies not only violate the law, but have a true impact on consumers. At best, the consumer's dispute is delayed for some period of weeks while this exchange of letters takes place and the consumer is forced to repeat the dispute while providing additional documentation. But even worse, a consumer who lives in a rural area and does not have access to a photocopier to make a copy of a government issued identification card or a utility statement could not ever have the dispute processed, nor could a consumer that did not possess these documents at all.

## CLASS ACTION ALLEGATIONS
## (EQUIFAX)

42. The Equifax FCRA Class. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows ("the Class"):

> All natural persons residing in the United States who sent a letter to the Defendant attempting to dispute items in their credit file and to whom the Defendant responded with a letter substantially similar to the letter attached hereto as Exhibit "A" within the 2 year period preceding the filing date of this Complaint.

43. **Numerosity**. The class members are so numerous that joinder of all is impractical. Plaintiff's counsel is in possession of many letters received by consumers that are substantially like those that the Defendant mailed to the Plaintiff. The class members' names and addresses are identifiable through documents maintained by the Defendant, and they may be notified of the pendency of this action by published or mailed notice.

44. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant had a right to request consumers' full social security numbers or other identifying information before processing their disputes; (b) whether Defendant actually required a social security number or more identifying information in order to locate the consumers' files; (c) whether Defendant failed to conduct an investigation of consumers' disputes; (d) whether Defendant failed to provide notice of consumers' disputes to the furnishers of the disputed information; and (e) whether the Defendant acted knowingly and intentionally or with conscious disregard of the rights of the consumers.

45. **Typicality**. Plaintiff's claims are typical of the claims of each class member and are all based on the same facts and legal theories. Upon information and belief, Defendant sent the same or substantially same standardized letters to consumers across all states located within the United States during the full class period. For purposes of class certification only, Plaintiff seeks only statutory and punitive damages. Plaintiff would seek individual or actual damages

only if class certification is denied. In addition, Plaintiff is entitled to the relief under the same causes of action as the other class members.

46.     **Adequacy.** Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

47.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.     As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. The statutory and punitive damages sought by each member are such that the individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences of proof in the case.

b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers for whom Defendant refused to process disputes in violation of the requirements of the FCRA are likely unaware of their rights under the law or where to find to proper legal representation for federal

litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

**COUNT ONE:**
**VIOLATION OF 15 U.S.C. § 1681i(a)(1)**
**CLASS CLAIM**
**(EQUIFAX)**

48. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

49. Equifax violated 15 U.S.C § 1681i(a)(1) by its conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently update the information in the file.

50. Because of this conduct, the Plaintiff suffered a delay in the processing of his dispute.

51. Equifax's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

52. The Plaintiff and the putative class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorney's fees from Equifax pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

**COUNT TWO:**
**VIOLATION OF 15 U.S.C. § 1681i(a)(2)**
**CLASS CLAIM**
**(EQUIFAX)**

53. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

54. Equifax violated 15 U.S.C § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to provide notice of the Plaintiff's dispute to the furnishers of the disputed information.

55. Because of this conduct, the Plaintiff suffered a delay in the processing of his dispute.

56. Equifax's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

57. The Plaintiff and the putative class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorney's fees from Equifax pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

### COUNT THREE: (VIOLATION OF 15 U.S.C. § 1681e(b))
### INDIVIDUAL CLAIM
### (EQUIFAX)

58. Plaintiff restates each allegation in the preceding paragraphs as if set forth at length herein.

59. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

60. Because of Equifax's alleged conduct, action, and inaction, the Plaintiff suffered actual damages, including, but not limited to, damage to his credit rating, lost opportunities to enter consumer credit transactions, denial of credit and aggravation, frustration, inconvenience, and embarrassment.

61. Equifax's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

62. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and his attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

### COUNT FOUR:
### VIOLATION OF 15 U.S.C. § 1681i(a)(1)
### CLASS CLAIM
### (TRANS UNION)

63. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

64. Trans Union violated 15 U.S.C § 1681i(a)(1) by its conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently update the information in the file.

65. Because of this conduct, the Plaintiff suffered a delay in the processing of his dispute.

66. Trans Union 's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

67. The Plaintiff and the putative class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorney's fees from Trans Union pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

### COUNT FIVE:
### VIOLATION OF 15 U.S.C. § 1681i(a)(2)
### CLASS CLAIM
### (TRANS UNION)

68. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

69. Trans Union violated 15 U.S.C § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to provide notice of the Plaintiff's dispute to the furnishers of the disputed information.

70. Because of this conduct, the Plaintiff suffered a delay in the processing of his dispute.

71. Trans Union's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

72. The Plaintiff and the putative class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorney's fees from Trans Union pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

**COUNT SIX: (VIOLATION OF 15 U.S.C. § 1681e(b))**
**INDIVIDUAL CLAIM**
**(TRANS UNION)**

73. Plaintiff restates each allegation in the preceding paragraphs as if set forth at length herein.

74. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

75. Because of Trans Union's alleged conduct, action, and inaction, the Plaintiff suffered actual damages, including, but not limited to, damage to his credit rating, lost opportunities to enter consumer credit transactions, denial of credit and aggravation, frustration, inconvenience, and embarrassment.

76. Trans Union's conduct, actions, and inaction were willful, rendering Trans Union liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Trans Union was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

77. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and his attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, on behalf of himself and the putative class members, moves for class certification; statutory and punitive damages against Equifax for his class claims; actual, statutory and punitive damages against Equifax and Trans Union for his individual claims; attorney's fees and costs; pre-judgment and post-judgment interest at the legal rate; and any such other relief the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**ERNEST MELO** *on behalf of himself and all others similarly situated*

By  /s/
Leonard A. Bennett, VSB #37523
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com

Matthew J. Erausquin, VSB No. 65434
**CONSUMER LITIGATION ASSOCIATES, P.C.**
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
(703) 273-7770 - Telephone
(888) 892-3512 – Facsimile
Email:  matt@clalegal.com